## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JASON S.,                              )
                                       )
                    Plaintiff,         )          Case No. 1:22-cv-2867
v.                                     )
                                       )          Magistrate Judge Jeannice W. Appenteng
MICHELLE KING, Acting                  )
Commissioner of Social Security,[1]    )
                                       )
                    Defendant.         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason S. seeks to overturn the final decision of the Acting

Commissioner of Social Security ("Commissioner") terminating his Supplemental

Security Income ("SSI") benefits. The parties consented to the jurisdiction of the

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-

motions for summary judgment. After review of the record and the parties'

respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for SSI on September 2, 2009. Administrative Record ("R.")

282-87. He suffered a heart attack in late 2010, and on October 21, 2011, an

administrative law judge ("ALJ") found that he was disabled as of July 15, 2009 due

to chronic heart failure. R. 134-38. Five years later in October 2016, the Social

Security Administration determined as part of a periodic "continuing disability

review" that plaintiff had experienced medical improvement and was no longer

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025.
She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

disabled. R. 139-40. A Disability Hearing Officer upheld that decision, R. 178-86, and plaintiff requested an administrative hearing. He appeared before another ALJ on July 24, 2018 but reported that his attorney had recently withdrawn. R. 84-96. The ALJ continued the hearing to allow plaintiff to secure new representation. *Id*.

On April 8, 2019, plaintiff (now 42 years old) appeared at a second hearing. He still did not have counsel but he provided an informed waiver and chose to proceed without representation. R. 99-100. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The ALJ heard testimony from plaintiff and from vocational expert Susan A. Entenberg (the "VE"). R. 97-127. On August 28, 2019, the ALJ found that since October 31, 2016, plaintiff has suffered from the following severe impairments: chronic heart failure with dependent edema, hypertension, obesity, diabetes mellitus with diabetic neuropathy, and metabolic syndrome. R. 54. Though these impairments are severe, they have not alone or in combination with plaintiff's non-severe impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 54-55.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving: occasional lifting and carrying of 10 pounds; standing and walking for two hours in an eight-hour workday; sitting for six hours in an eight-hour workday; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; no work at unprotected heights or driving or operating moving machinery; and no concentrated exposure to

temperature extremes. R. 55-58. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform a significant number of jobs available in the national economy. R. 58-59. As a result, the ALJ concluded that plaintiff's disability ended on October 31, 2016 and he has not been entitled to benefits since that date. R. 59. On May 19, 2020, the Appeals Council declined to review the ALJ's decision, R. 34-39, making it the final decision of the Commissioner and reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ erred in discounting his subjective statements regarding his limitations.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). Where, as here, a claimant has been

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

deemed disabled, the Social Security Administration ("SSA") "must periodically conduct a continuing disability review to determine if the benefits recipient remains eligible." *Fitschen v. Kijakazi*, 86 F.4th 797, 803 (7th Cir. 2023); 20 C.F.R. § 416.989. A claimant is no longer eligible for benefits if there has been "medical improvement," meaning "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent . . . decision [in the claimant's favor]." 20 C.F.R. § 416.994(b)(1); *Kimberly T. v. Saul*, No. 19 C 487, 2019 WL 6310016, at *1 (N.D. Ill. Nov. 25, 2019).

In assessing medical improvement, the SSA considers an eight-part test: "(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1; (3) if not, whether there has been medical improvement (as defined above); (4) if there has been medical improvement, is it related to the claimant's ability to do work (i.e., has it caused an increase in his RFC); (5) if there has not been medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exceptions to medical improvement apply; (6) if the medical improvement is related to the claimant's ability to do work or if certain exceptions apply, are his current impairments in combination severe; (7) if the claimant's impairment is severe, does he have the RFC to do past relevant work; and (8) if the claimant cannot do past relevant work, does his RFC enable him to do other work." *Milton B. v. Kijakazi*,

No. 20 C 5482, 2023 WL 4134812, at *2 (N.D. Ill. June 22, 2023). *See also* 20 C.F.R. § 416.994(f).

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.    Analysis**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not fully supported.[3] Dkt. 19 at 7-12; Dkt. 27

---

[3] In his opening brief, plaintiff also suggested that the ALJ erred because he failed to seek an updated medical opinion regarding the significance of a 2017 EMG test and instead relied on outdated state agency opinions. Dkt. 19 at 10-11. The Commissioner responded with a detailed explanation as to why an updated medical opinion was not necessary, Dkt.

at 1-7. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

---

24 at 11-15, and plaintiff did not address the issue in his reply brief. Dkt. 27 at 1 (stating only that "[r]egardless of whether the ALJ should have sought an updated medical opinion, his decision must still be remanded because his subjective symptom analysis was legally and factually flawed and cannot withstand scrutiny"). The Court thus deems the argument withdrawn.

Plaintiff testified that after he had gastric bypass surgery in January 2015, he lost weight (getting down to 245 pounds) and was able to walk two or three blocks. R. 107, 110. As of the April 2019 hearing, however, his weight had increased to 309 pounds and he "can't even walk a whole block without getting out of breath real fast." R. 110. Plaintiff stated that if he sits for too long, his back starts hurting, and he suffers from neuropathic foot pain that feels like pins and needles and "comes and goes randomly." R. 115-16. In addition, he experiences leg swelling and knee pain that limit his ability to walk. R. 109-11. Plaintiff testified that the "biggest barrier" to working is that his medications make him feel sleepy all the time. R. 111, 120. He has "like 13" prescriptions and spends most of his day lying down. R. 112.

In discounting this testimony, the ALJ first found it inconsistent with the objective medical evidence. R. 56. Following plaintiff's January 2015 bariatric surgery, he routinely presented with regular cardiac rate and rhythm throughout 2015 and 2016 and no longer needed diabetes medication. R. 56 (citing R. 411, 432-35, 442-45, 460, 464, 470). An October 14, 2016 internal medicine consultative exam revealed: regular cardiac rate and rhythm; full and symmetric peripheral pulses; no extremity edema; an ability to walk 50 feet without assistance despite a wide-based gait; normal grip strength; normal range of motion in all joints except the knees; normal range of motion in the spine; full strength of 5/5 in all extremities; and no use of an assistive device despite decreased foot sensation. R. 57, 424.

7

Records from 2017 and 2018 continued to document stable cardiac symptoms. Though a March 2017 note showed elevated hypertension, this was secondary to plaintiff not taking his morning medication. R. 57, 615. A July 17, 2017 echocardiogram showed an ejection fraction of 55% to 65%, in the normal range, R. 57, 661, and on November 29, 2017, plaintiff's hypertension was well-controlled, he had no chest pain, and his peripheral neuropathy was stable. R. 57, 631. Plaintiff exhibited some worsening edema in May 2018, but exams in July and October 2018 revealed no edema, regular cardiac rate and rhythm, and clear lungs. R. 57 (citing R. 645, 698, 710, 718, 794). The ALJ discussed all of this evidence and reasonably found it inconsistent with plaintiff's complaints of a near total inability to walk or sit for any length of time. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record").

The ALJ further considered the opinion evidence of record in assessing plaintiff's testimony. On October 25, 2016, Vidya Madala, M.D. opined that plaintiff can perform light work with no additional restrictions aside from occasional balancing. R. 472-79. On January 4, 2017, James Hinchen, M.D. affirmed the RFC for light work but included some additional postural and environmental restrictions (occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing; and no concentrated exposure to hazards). R. 480-87. The ALJ found these opinions partially persuasive but limited plaintiff to sedentary work

8

with some additional postural and environmental restrictions to account for his peripheral neuropathy and obesity. R. 57. Plaintiff does not identify any physician of record who found him more limited. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal"); *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. Aug. 13, 2010) (finding no error where "[i]t was because of and not in spite of [the claimant's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record").

Plaintiff argues that the ALJ ignored or misconstrued other evidence that supports his claims of disabling symptoms. Dkt. 19 at 9-10; Dkt. 27 at 3-6. For example, exams conducted in May 2018 and in January, February, April, and May 2019 all revealed edema in plaintiff's lower extremities, which he says is consistent with his July 2018 report of "on/off" swelling. R. 711. And plaintiff complained of bilateral foot tingling requiring periodic increases to his gabapentin dosage. R. 618, 631-32, 638. This argument fails because the ALJ expressly considered plaintiff's leg swelling and peripheral neuropathy in determining the RFC, R. 57, and plaintiff does not explain how these conditions evidence greater functional restrictions. *See Weaver v. Berryhill*, 746 F. Appx. 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work").

9

Also unavailing is plaintiff's objection that the ALJ discounted his statements solely based on the objective evidence. Rather, the ALJ additionally found the statements inconsistent with plaintiff's activities of daily living, which included shopping in stores, going to the laundromat, performing personal care, and driving on occasion. R. 56, 308-11. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). And here, the ALJ did not equate plaintiff's ability to engage in these activities with an ability to work full-time but simply noted that plaintiff was able to engage in more robust activities than would be expected for a person with his claimed limitations. This was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. Apr. 5, 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

Plaintiff finally argues that the ALJ committed reversible error by failing to consider limitations on his activities. For example, he only goes to the grocery store once a month for half an hour at a time, he needs his mother's help washing his clothes at the laundromat, and he takes frequent naps. Dkt. 19 at 8; Dkt. 27 at 2. With respect to napping, no physician of record indicated that plaintiff needs to sleep during the day. *See Imse v. Berryhill*, 752 F. Appx. 358, 360-62 (7th Cir. 2018)

10

(ALJ properly disregarded claimant's hearing testimony of needing to lie down or nap 90 minutes to 4 hours a day 2 to 5 days a week, where "no physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day").

As for plaintiff needing his mother's help and shopping infrequently, it is true that "an ALJ is supposed to consider [such] limitations in performing household activities, [but] the ALJ's opinion must be looked at in its entirety." *Kenlee F. v. Colvin*, No. 21 C 50355, 2025 WL 92589, at *5 (N.D. Ill. Jan. 14, 2025) (internal citation omitted). Viewing the record as a whole using a common-sense approach, *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019), the ALJ provided good reasons for discrediting plaintiff's testimony and that decision is supported by substantial evidence and not patently wrong. R. 56-57. *See Bruno v. Saul*, 817 F. Appx. 238, 241 (7th Cir. 2020) (quoting *Biestek*, 587 U.S. at 103) ("Substantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"); *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *5 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)) (an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong").

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [19] is denied, and the Commissioner's motion for summary judgment [23] is

11

granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**